UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CTC International, Inc.** *d/b/a* **UBUNTU,** *Plaintiff* | § § § § |
| **v.** | § § Case No. 1:21-cv-0676-RP |
| **The Supply Change, LLC,** *Defendant* | § § § |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Leave to File Amended Complaint, filed October 4, 2022 (Dkt. 18); Defendant's Rule 12(b)(1) Motion to Dismiss and Brief in Support, filed October 20, 2022 (Dkt. 22); and the associated response and reply briefs.[1]

**I.   Background**

Plaintiff CTC International, Inc. d/b/a Ubuntu ("CTC") is a nonprofit corporation organized under Texas law with its principal place of business in Austin, Texas. Original Complaint (Dkt. 1) ¶ 1. CTC works with Maasai craftswomen in Kenya to create handmade products for sale in the United States and internationally. *Id.* ¶ 14. CTC's best-selling products generally have been beaded message bracelets, which have been sold in the United States since at least 2014. *Id.* ¶¶ 14, 18.

Defendant The Supply Change, LLC ("Supply Change") was a limited liability corporation incorporated under Texas law with its principal place of business in Austin, Texas from 2015 until 2020, when it converted to a limited liability corporation in California. *Id.* ¶¶ 2-3. On March 1,

---

[1] By Text Orders entered October 12 and October 24, 2022, the District Court referred the motions to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

2015, after CTC successfully contracted with Supply Change to produce a new product not at issue here, the parties entered into an independent contractor agreement ("Agreement"), which was amended effective January 31, 2016. *Id.* ¶¶ 15-16, 22. Supply Change offered consulting services under the Agreement, including "cultivating new customers for Plaintiff and engaging in the sale of Plaintiff's products." *Id.* ¶ 24.

CTC alleges that Supply Change placed purchase orders for its products totaling $84,577 but has paid only $66,305.38, leaving a balance owed of $18,271.62. *Id.* ¶¶ 24, 30. CTC further alleges that Supply Change has violated the Agreement by selling beaded message bracelets "virtually identical to those designed and created by Plaintiff" and submitting them as specimens in support of an application to register Supply Change's word mark LOVE IS PROJECT on the Principal Register. *Id.* ¶¶ 25-26 & Dkt. 1-4 (Exh. D). CTC also alleges that Supply Change "has engaged in a course of business disparagement directed at Plaintiff with the intent to damage Plaintiff's business reputation." Dkt. 1 ¶ 31.

CTC filed this action on August 2, 2021, asserting claims for infringement of an unregistered trademark, in violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a); unfair competition and dilution by blurring or "garnishment,"[2] in violation of Lanham Act Section 43(c), 15 U.S.C. § 1125(c); breach of contract; and injury to business reputation and dilution under the Texas Business and Commerce Code. CTC seeks damages, attorney fees, and injunctive and other relief.

On April 27, 2022, Supply Change moved the Court to dismiss CTC's Lanham Act claims and decline to exercise jurisdiction over CTC's remaining state law claims. Dkt. 13. This Magistrate Judge recommended that the District Court grant Supply Change's motion and dismiss CTC's federal claims without prejudice, and the District Court adopted the report and recommendation.

---

[2] Dkt. 1 ¶ 45. While not addressed by the parties, the Court construes this as a typographical error for "tarnishment."

Dkt. 16; Dkt. 20. CTC now requests leave to file an amended complaint, while Supply Change moves to dismiss the state law claims in CTC's Original Complaint for lack of jurisdiction. Both motions are opposed.

## II.   CTC's Motion to Amend

Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

**A.  Infringement of Unregistered Mark and Trade Dress**

Lanham Act Section 43(a) provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(a). "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *YETI Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 907 (W.D. Tex. 2018) (quoting *Amazing Spaces, Inc. v .Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010)).

To succeed on a claim of infringement of unregistered product design trade dress under the Lanham Act, a plaintiff must establish that its trade dress is not functional and has acquired secondary meaning, and that there is a likelihood of consumer confusion. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000); *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994). A plaintiff must "articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *JDS*, 300 F. Supp. 3d at 907 (citation

omitted); *see also Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015) (stating that a plaintiff "must identify the discrete elements of the trade dress that it wishes to protect").

The District Court dismissed the Lanham Act claims in CTC's Original Complaint because CTC failed to identify any discrete elements of its bracelets comprising its protected trade dress. This Magistrate Judge finds that CTC's proposed Amended Complaint fails to state a Lanham Act claim for the opposite reason: Its allegations are overbroad, as well as inconsistent.

CTC includes in its complaint this image of an allegedly infringing Supply Change bracelet:



Dkt. 18-1 at 14-16. CTC also offers eight "example[s] of the CTC beaded message bracelets." *Id*. ¶ 19. The first is:



*Id.* As stated in the previous Report and Recommendation, the Court agrees that these two bracelets appear identical. But CTC alleges that its trade dress is far broader.

4

CTC offers seven additional "example[s] of the CTC beaded message bracelets":



*Id.* And it alleges that its trade dress comprises multifarious elements, including the following:

- "CTC's beaded message trademark, applied to its fashion accessory goods in trade since 2011, consists of a repeating-pattern beadwork, arranged in uniform three or five bead rows, with minimalist messages inserted by means of changes in the color of the beads inside the rows to form letters." Dkt. 18-1 ¶ 22.

- "In recent years, CTC's repeating pattern trademark has included a distinctive arrangement of orange and turquoise beads at the end of the bracelet clasp. *Id.* ¶ 23.

- "Among the various Beaded message bracelets, CTC sold variations of Beaded message bracelets that include discrete trade dress elements that are present in four general areas of the Beaded message bracelets: 1) The outward facing area; 2) The inward facing area; 3) The rim area; and 4) The end areas." *Id.* ¶ 25.

- "The outward facing central area trade dress for various Beaded message bracelets contains multiple rows (e.g., 3 or 5) of beads configured in a generally parallel configuration, as depicted in Figure B. The beads included in the outward facing central area configured to display a word(s) (e.g., LOVE, UNITE, TEAMO, DREAM, LET GO) in a single color (e.g., white, orange, off-white, yellow) surrounded by beads of another single color (e.g., red, orange, blue, black). The word(s) extend from the top row of beads to the bottom row of beads. Each letter in the word(s) is spaced from the next letter in the word(s) by a multiple of beads." *Id.* ¶ 26.

- "The outward facing area trade dress for various Beaded message bracelets contains rows and columns of beads wherein the beads included in at least some of the columns are not disposed directly over or directly underneath the one or more beads in the same column." *Id.* ¶ 27.

- "The inward facing area trade dress for various Beaded message bracelets include a brown (e.g., tannish natural look) inside backward facing area that is parallel to the rows of beads and extends past the opposing ends of the rows of beads. Various Beaded message bracelets are leather beaded message bracelets that provide the distinctive brown (e.g., tannish natural look) inside backward facing area of the Beaded message bracelets, as depicted above and in Exhibit B." *Id.* ¶ 28.

- "The rim area trade dress for various Beaded message bracelets include a distinctive non-polished, and uneven textured, black rim extending generally perpendicular to the top and bottom backward facing areas of the beads, as depicted above and in Exhibit B." *Id.* ¶ 29.

- "The end area trade dress for various Beaded message bracelets contains further include a knotted look." *Id.* ¶ 30.

- "The rows of beads for various Beaded message bracelets are tapered at the ends of the rows such that the number of rows in the central area of the bracelet outnumber the number of rows at the opposing ends of the bracelet." *Id.* ¶ 31.

By these allegations in its Amended Complaint, CTC again fails to plausibly articulate a protected trade dress, for at least two reasons. First, CTC alleges alternative variations of its asserted trade dress that could be found in any beaded message bracelet. Because CTC identifies "e.g. [for example], 3 or 5" rows of beads, its claims cover any number of multiple rows. *Id.* ¶ 26. Second, CTC identifies many elements present only in some of its bracelets. For example:

1. The outward facing area: The letters in some bracelets shown in CTC's Amended Complaint are separated from the next not "by a multiple of beads," but by a single-bead column (i.e., TEAMO, UNITE, and LET GO). *Id.* ¶ 26.

2. The inward facing area: Some bracelets are leather but some are not and lack "the distinctive brown (e.g., tannish natural look) inside backward facing area backing." *Id.* ¶ 28.

3. The rim area: Only two exemplar bracelets have the claimed black rim. *Id.* ¶ 29.

4. The end areas: Only two exemplar bracelets feature orange and turquoise beads at the end of the bracelet clasp. *Id.* ¶ 23.

Because CTC's allegations of the trade dress of its "various" bracelets are insufficiently precise to offer notice pleading of its asserted trade dress, it has failed to identify its trade dress "with sufficient clarity or consistency." *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F. Supp. 3d 788, 807 (S.D. Tex. 2017); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) (stating that "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance") (citation omitted); 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR

6

COMPETITION § 8:3 (5th ed. Mar. 2023 Update) ("MCCARTHY") ("All types of intellectual property, including unregistered trade dress, must have clearly defined boundaries of what is alleged to be the zone of exclusive rights."). As Supply Change argues:

> The multiplicity of possible combinations of optional features makes it impossible to discern a single distinctive look in Plaintiff's description of its alleged trade dress. Without any discrete elements to create a consistent overall look and feel, Plaintiff has not and cannot adequately plead that it has trade dress protection in its bracelet design.

Dkt. 21 at 7.

The Court concludes that because CTC does not identify the specific elements of its bracelets comprising its protected trade dress with clarity and consistency in its Amended Complaint, it has not provided fair notice of its claim, and the Court cannot evaluate the claim's plausibility.

## B. Dilution

Lanham Act Section 43(c)(1) provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). Section 43(c)(4) provides: "In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—(A) the claimed trade dress, taken as a whole, is not functional and is famous . . . ." 15 U.S.C. § 1125(c)(4). To state a dilution claim under the Lanham Act, CTC must allege that (1) it owns a famous and distinctive mark; (2) Supply Change has commenced using a mark in commerce that is diluting its mark; (3) the similarity between the parties' marks gives rise to an association between the marks; and (4) the association is likely to

7

impair the distinctiveness of CTC's mark or harm the reputation of its mark. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 548 (5th Cir. 2015).

In its Original Complaint, CTC alleged that it "is the owner of a famous mark that is distinctive." Dkt. 1 ¶ 43. CTC seeks to amend its dilution claim by alleging that it "is the owner of a famous mark **and trade dress** that is distinctive." Dkt. 18-1 ¶ 71 (emphasis added).

Once again, the Court finds that CTC has not sufficiently pled in its Amended Complaint that it owns a famous mark or trade dress. To prevail on its dilution claim, CTC ultimately must establish that the bracelet mark and trade dress it asserts is famous, that is, "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Lanham Act Section 43(c)(2)(A), 15 U.S.C. § 1125(c)(2)(A).

At the motion to dismiss stage, this Court has found that fame may be plausibly pled by allegations such as how long a mark has been in use, the extent of advertising and sales, and public recognition. *See, e.g.*, *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, Nos. 1:18-CV-978-RP, 1:18-CV-596-RP, 2019 WL 3130231, at *5 (July 15, 2019) (denying motion to dismiss dilution claim); *Yeti Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, at *8 (May 18, 2017) (same). Such allegations are pertinent to pleading and later proving that a mark has "the requisite degree of recognition" for a dilution claim because they are among the relevant fame factors identified in the Section 43(c)(2)(A), which include:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; and
>
> (iii) The extent of actual recognition of the mark.

15 U.S.C. § 1125(c)(2)(A).

Among these factors, in its Amended Complaint, CTC specifically addresses only the duration of use, alleging that its bracelets have been sold since 2014. Dkt. 18-1 ¶ 18. This is insufficient. While CTC need not prove that its mark and trade dress are famous at this juncture, it must allege facts showing that fame is plausible. *TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 292 F. Supp. 3d 864, 873 (N.D. Iowa 2018). CTC's mere allegations that its bracelet mark and trade dress have been in use for nine years and are famous fail to plausibly state a claim for dilution. *See, e.g.*, *Read-A-Thon Fundraising Co. v. 99Pledges, LLC*, No. 3:22-CV-0420-D, 2022 WL 2704043, at *6-7 (N.D. Tex. July 12, 2022) (dismissing dilution claim as insufficiently pled although plaintiff alleged nearly twenty years of use and extensive marketing, advertising, and sales); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 749 (E.D. Mich. 2014) (dismissing trade dress dilution claim); *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (same); *see also* 4 MCCARTHY § 24:104 ("Neither a conclusory allegation that the mark is 'famous' nor alleging that the mark is famous in a niche segment is a sufficient pleading.") (collecting cases); *cf. Icon Health & Fitness, Inc. v. Kelley*, No. 1:17-CV-356-LY, 2017 WL 6610085, at *3 (W.D. Tex. Dec. 27, 2017) (finding description of significant promotion and nationwide sales for more than eighteen years sufficient to allege fame), *R. & R. adopted*, 2018 WL 1203465 (W.D. Tex. Jan. 11, 2018).

### C. Conclusion on Motion to Amend

CTC has had two opportunities to plead its Lanham Act claims for infringement and dilution. Because it has sufficiently pleaded neither of those claims, the Court recommends that the District Court deny as futile CTC's Motion to Amend its Lanham Act claims.

### III.   Claims under Texas Law

Finally, in its Motion to Dismiss, Supply Change asks the Court to dismiss the claims in CTC's Original Complaint for (1) breach of contract and (2) injury to business reputation and dilution

under Texas Business and Commerce Code § 16.103. CTC asserts these same claims in both its Original Complaint and proposed Amended Complaint.

Supply Change argues that the Amended Complaint shows there is not complete diversity between the parties and asks the Court to decline to exercise supplemental jurisdiction over CTC's state law claims. Supply Change makes the same arguments in its response to CTC's Motion to Amend. *See* Dkt. 21 at 17-18. CTC asserts that Supply Change's Motion to Dismiss is premature because CTC's Motion to Amend remains pending, contending that Supply Change has "abused the litigation process to inflate the costs of this case." Dkt. 24 at 4.

Courts have an independent obligation to determine their own subject matter jurisdiction. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). For that reason, and in the interest of judicial economy, the Court construes Supply Change's Motion to Dismiss as addressing CTC's Amended Complaint. *Cf. Schaefer v. Whitted*, 121 F. Supp. 3d 701, 707 n.1 (W.D. Tex. 2015) ("While the amended pleading generally operates to moot any pending motions to dismiss, an exception exists where a pending motion attacks the original complaint for deficiencies that persist in the amended complaint.") (cleaned up); 6 MARY KAY KANE, FED. PRAC. & PROC. CIV. ("WRIGHT & MILLER") § 1476 (3d ed. April 2022 Update) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.") (footnote omitted).

The federal diversity jurisdiction statute provides the district courts with jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). To properly allege diversity jurisdiction under § 1332, the parties must allege "complete diversity." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313

(5th Cir. 2019). Whether diversity jurisdiction exists is determined by examining the citizenship of the parties when the suit was filed. *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).

In its Amended Complaint, CTC alleges that on May 28, 2020, Supply Change "filed articles of organization in California that converted Supply Change from a limited liability corporation in Texas to a limited liability corporation in California under California law." Dkt. 18-1 ¶ 3. On December 22, 2020, "in the midst of settlement negotiations with Plaintiff," Supply Change "filed a Notice of Termination with the Secretary of State for the State of Texas intended to terminate its limited liability corporation in Texas." *Id.* ¶ 4. CTC alleges that under Texas law,

> the terminated Texas limited liability company continues in existence until the third anniversary of the effective date of the entity's termination for purposes of an action brought against the terminated entity. If an action on an existing claim against a terminated entity is brought, the terminated entity continues to survive until all judgments, orders and decrees have been fully executed.

*Id.* ¶ 5 (citing TEX. BUS. ORG. CODE § 11.356). "Under the above-described circumstances and to the extent necessary, Plaintiff's action has been brought against Defendant's terminated Texas limited liability corporation and against Defendant's converted California limited liability corporation." *Id.* ¶ 6.

CTC's complaint was filed on August 2, 2021, within the three-year survival period. The Court concludes that Supply Change retained its Texas citizenship under Texas law when the suit was filed, and that CTC's action accrued before Supply Change filed for termination. *See, e.g.*, *Graves v. Decca Consulting, Inc.*, No. PE:20-CV-00021-DC-DF, 2020 WL 10317466, at *2 (W.D. Tex. June 11, 2020) (distinguishing cause of action that accrued after defendant forfeited existence); *Diffley v. JPMorgan Chase Bank, N.A.,* No. 4:13-CV-00986-O, 2013 WL 12131599, at *2 (N.D. Tex. Dec. 19, 2013) (holding that citizenship of terminated Texas entity could not be disregarded in determining subject-matter jurisdiction); *Miller v. Gibraltar Savs. Ass'n*, No. G-05-328, 2005

WL 1719702, at *2 (S.D. Tex. 2005) (remanding case after removing party failed to show that dissolved savings and loan association was no longer Texas citizen for diversity purposes).[3] Therefore, there is not complete diversity between CTC, a Texas company, and Supply Change, named as both a California corporation and a terminated Texas corporation.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. A court's decision whether to exercise supplemental jurisdiction over state law claims after dismissing every claim over which it had original jurisdiction "is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In the Fifth Circuit, "the general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated prior to trial." *Sanchez v. Griffis*, 569 F. Supp. 3d 496, 518 (W.D. Tex. 2021) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *appeal filed*, No. 21-51160 (5th Cir. Dec. 3, 2021).

The District Court has dismissed CTC's Lanham Act claims and lacks diversity jurisdiction. This Magistrate Judge recommends that the District Court in its discretion decline to exercise supplemental jurisdiction over CTC's state law claims and dismiss them without prejudice.

### IV.     Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court

1. **DENY** Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 18) with prejudice;

2. **GRANT** Defendant's Rule 12(b)(1) Motion to Dismiss (Dkt. 22) and **DISMISS** CTC's claims for Breach of Contract (Count II) and Injury to Business Reputation and Dilution under Texas Business & Commerce Code (Count III) without prejudice; and

3. Enter judgment against CTC.

---

[3] Because the Court concludes that complete diversity is lacking, it need not address Supply Change's argument that because CTC has pled damages of only $18,721.62, the amount in controversy does not satisfy the $75,000 jurisdictional minimum.

**IT IS ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 20, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE